1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DAVID HAMILTON,                          No.  2:19-cv-2210 DAD AC P

12                    Plaintiff,

13           v.                               FINDINGS & RECOMMENDATIONS

14   M. SON,

15                    Defendant.

16

17          Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42

18   U.S.C. § 1983.  Currently before the court is defendant's motion for summary judgment.  ECF

19   No. 33.

20   I.      Procedural History

21          Upon screening the complaint, the court found that plaintiff stated a claim against

22   defendant Son for medical deliberate indifference.  ECF No. 8.  The sexual harassment claim was

23   dismissed without leave to amend. ECF Nos. 8, 14.  After the close of discovery, defendant

24   moved for summary judgement (ECF No. 33), which plaintiff opposes (ECF No. 38).

25   II.     Plaintiff's Allegations

26          The complaint alleges that defendant Son, a prison doctor, discontinued plaintiff's

27   prescription for Tylenol 3 without providing a substitute medication to treat the pain in plaintiff's

28   arthritic hip and shoulder.  ECF No. 1 at 3.  As a result of this discontinuation and lack of

                                                 1

substitution, plaintiff suffered pain and other adverse effects for the eight to nine months he was without pain medication.  Id. at 3, 5.

III.     Motion for Summary Judgment

A.     Defendants' Arguments

Defendant moves for summary judgement on the ground that he was not deliberately indifferent to plaintiff's medical needs.  ECF No. 33-1 at 6-8.  He argues that discontinuing an opioid medication in favor of safer alternatives is medically acceptable under the circumstances, and that he believed the prescription for acetaminophen would adequately treat plaintiff's pain and potential withdrawal symptoms.  Id.  Alternatively, he argues that he is entitled to qualified immunity.  Id. at 8-10.

B.     Plaintiff's Response

At the outset, the court notes that although plaintiff has filed a separate document in response to defendant's statement of undisputed facts that identifies which facts are admitted and which are disputed, he has not supported each denial with an appropriate citation to materials on the record, as required by both Federal Rule of Civil Procedure 56(c)(1)(A) and Local Rule 260(b).

"Pro se litigants must follow the same rules of procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), overruled on other grounds, Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).  However, it is well-established that district courts are to "construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly."  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  The unrepresented prisoner's choice to proceed without counsel "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes upon a litigant," such as "limited access to legal materials" as well as "sources of proof." Jacobsen v. Filler, 790 F.2d 1362, 1364 n.4 (9th Cir. 1986) (alteration in original) (citations and internal quotation marks omitted).  Inmate litigants, therefore, should not be held to a standard of "strict literalness" with respect to the requirements of the summary judgment rule.  Id. (citation omitted).

Accordingly, though plaintiff has largely complied with the rules of procedure, the court will consider the record before it in its entirety.  However, only those assertions in the opposition which have evidentiary support in the record will be considered.

Plaintiff argues that defendant was deliberately indifferent to his medical needs by not substituting synthetic opioid methadone or buprenorphine (Suboxone) and not referring plaintiff to the "MAT" program to mitigate his withdrawals and treat his opioid addiction.[1]  ECF No. 38 at 9.  He further argues that the failure to provide substitute assisted treatment, which he requested when defendant offered Motrin or Tylenol, caused "unnecessary discriminatory barriers to recovery" from his withdrawals and addiction.  Id. at 20.

C.   Defendant's Reply

In reply to the opposition, defendant argues that plaintiff's claim amounts to nothing more than a difference in opinion regarding the course of medical treatment which fails to show deliberate indifference.  ECF No. 39.  Additionally, defendant argues that he is entitled to qualified immunity because plaintiff has not established that the law was clear at the time that prescribing acetaminophen under the circumstances violated the Eighth Amendment.  Id. at 2.

IV.   Legal Standards for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

---

[1]  Plaintiff states that the "MAT" program is a substitute treatment program that uses Suboxone and methadone in addition to group classes to treat opioid use disorder.  ECF No. 38 at 20.

3

1    support the fact." Fed. R. Civ. P. 56(c)(1).

2         "Where the non-moving party bears the burden of proof at trial, the moving party need

3    only prove that there is an absence of evidence to support the non-moving party's case." Oracle

4    Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

5    Indeed, summary judgment should be entered, "after adequate time for discovery and upon

6    motion, against a party who fails to make a showing sufficient to establish the existence of an

7    element essential to that party's case, and on which that party will bear the burden of proof at

8    trial." Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element

9    of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.  In such

10   a circumstance, summary judgment should "be granted so long as whatever is before the district

11   court demonstrates that the standard for the entry of summary judgment, as set forth in Rule

12   56(c), is satisfied." Id.

13        If the moving party meets its initial responsibility, the burden then shifts to the opposing

14   party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.

15   Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In attempting to establish the

16   existence of this factual dispute, the opposing party may not rely upon the allegations or denials

17   of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

18   admissible discovery material, in support of its contention that the dispute exists. See Fed. R.

19   Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a

20   fact "that might affect the outcome of the suit under the governing law," and that the dispute is

21   genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving

22   party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

23        In the endeavor to establish the existence of a factual dispute, the opposing party need not

24   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

25   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

26   trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)

27   (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).  Thus, the

28   "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see

                                                        4

whether there is a genuine need for trial." <u>Matsushita</u>, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." <u>Walls v. Cent. Contra Costa Transit Auth.</u>, 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).  It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  <u>See</u> <u>Richards v. Nielsen Freight Lines</u>, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita</u>, 475 U.S. at 586 (citations omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Id.</u> at 587 (quoting <u>First Nat'l Bank</u>, 391 U.S. at 289).

Due to an oversight, defendant did not simultaneously serve plaintiff with a proper <u>Rand</u> notice that included the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure at the time he served his motion for summary judgment.  ECF No. 33-2. Instead, he served an amended <u>Rand</u> Notice on plaintiff approximately one month later.  ECF No. 36.  <u>See</u> <u>Klingele v. Eikenberry</u>, 849 F.2d 409, 411 (9th Cir. 1988) (pro se prisoners must be provided with notice of the requirements for summary judgment); <u>Rand v. Rowland</u>, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).  Plaintiff was granted additional time to file his opposition to ensure he received the benefit of the notice.  ECF No. 37.

V.     Applicable Legal Standards for Claims

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976)).  "First, the plaintiff must show a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.' Second, the plaintiff must show the defendant's response to the need was deliberately indifferent." <u>Id.</u> (quoting <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

1   "Indifference 'may appear when prison officials deny, delay or intentionally interfere with

2   medical treatment, or it may be shown by the way in which prison physicians provide medical

3   care.'" Id. (quoting McGuckin, 974 F.2d at 1059). "Mere indifference, negligence, or medical

4   malpractice" will not support a claim of deliberate indifference. Lemire v. Cal. Dep't of Corr. &

5   Rehab., 726 F.3d 1062, 1082 (9th Cir. 2013) (internal quotation marks omitted) (quoting

6   Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980)). A difference of opinion between

7   inmate and prison medical personnel—or between medical professionals—regarding appropriate

8   medical diagnosis and treatment is not enough to establish a deliberate indifference claim.

9   Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989) (citations omitted); Toguchi v. Chung, 391

10  F.3d 1051, 1058 (9th Cir. 2004) (citation omitted). To establish that a difference of opinion rises

11  to the level of deliberate indifference, plaintiff "must show that the chosen course of treatment

12  'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of

13  an excessive risk to [the prisoner's] health.'" Toguchi, 391 F.3d at 1058 (quoting Jackson v.

14  McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)).

15      VI.    Undisputed Material Facts

16          While plaintiff separately responded to defendant's Statement of Undisputed Facts

17  (DSUF), he failed to cite "parts of materials in the record, including depositions, documents,

18  electronically stored information, affidavits or declarations, stipulations (including those made for

19  purposes of the motion only), admissions, interrogatory answers, or other materials" to support

20  his disputes, as required by Federal Rule of Civil Procedure 56(c)(1)(A) and Local Rule 260(b).

21  See Response to DSUF (ECF No. 38 at 1-4). Accordingly, so long as they are supported by the

22  record,[2] defendant's facts are deemed undisputed except as otherwise discussed.[3] Additional

23  facts have been taken from plaintiff's medical records, the authenticity and accuracy of which are

24  not in dispute.

25  _____

26  [2] The court will consider only the portions of defendant's declaration that are based upon
    defendant's personal knowledge and will not consider the portions that address treatment by other

27  physicians unless corresponding medical records have been produced on the record.
    [3] Plaintiff disputes DSUF ¶¶ 3, 5, 8-9, 11, and 13 without any explanation or citation to the

28  record and they are therefore deemed undisputed.

6

1        At all relevant times, plaintiff was confined at Mule Creek State Prison (MCSP), where

2   defendant was employed as a doctor.  DSUF at ¶¶ 1-2;[4] Response to DSUF ¶ 1.

3        Beginning in 2015, plaintiff was prescribed Tylenol with codeine, an opioid, to treat

4   clavicle and hip pain.  DSUF ¶¶ 5-6; Response to DSUF ¶ 6.  On October 15, 2018, Dr. Wong,

5   who is not a defendant in this action, examined plaintiff and noted that he had "[c]omplaints of

6   chronic pain of the right hip due to fighting with custody officer about 2 years ago" and "[d]enied

7   interference with daily activities" with "no physical impairment no limitation of function."  ECF

8   No. 33-3 at 24.  Dr. Wong further found that plaintiff had "[f]ull range of motion of all 4

9   extremities and spine" as well as "no tenderness, tremor, cyanosis, or edema," and was "fully

10  ambulatory" and able to "walk briskly without any antalgic gait."[5] Id. at 26.  Under the

11  assessment/plan section, Dr. Wong ordered "X-ray baseline to evaluate" and noted that plaintiff

12  "[m]ay use over-the-counter pain medication as needed" for his chronic pain and should

13  "[c]ontinue home exercise program and gradual stretching exercises."  Id.

14       On November 2, 2018, Dr. Wong noted that plaintiff had chronic pain and "requests to

15  continue Tylenol No. 3.  Pain management committee form completed and it is sent to medical

16  secretary today pending appointment to discuss for approval or denial of narcotic pain medication

17  for chronic use."  Id. at 28.

18       On November 13, 2018, plaintiff had an appointment with defendant for a medication

19  review.  DSUF ¶ 7;[6] ECF No. 33-3 at 31.  Prior to the appointment, defendant reviewed plaintiff's

20  _____

21  [4]  Plaintiff denied DSUF ¶ 2 by stating that Dr. Wong, a non-party, was a physician and surgeon
    at MCSP.  Response to DSUF ¶ 2.  He cites no evidence that defendant was not a doctor at

22  MCSP, and Wong being a physician and surgeon does not preclude defendant from being one.
    DSUF ¶ 2 is therefore deemed admitted.

23  [5]  The Cleveland Clinic defines antalgic gait as an abnormal gait resulting from pain.  Cleveland
    Clinic, *Gait Disorders and Abnormalities*,

24  https://my.clevelandclinic.org/health/symptoms/21092-gait-disorders.

25  [6]  Plaintiff disputes DSUF ¶ 7 on the ground that it is "not supported by evidence, lacks
    cognizable legal theory, and plaintiff would prevail on the triable issues of fact(s) at trial."  ECF

26  No. 38 at 4.  Except for defendant's statements that Dr. Wong concluded that Tylenol with
    codeine should be discontinued and that the recommendation was affirmed by the pain

27  management committee, which will be addressed further below, the undersigned finds that DSUF
    ¶ 7 is supported by the records cited.  Because plaintiff has not cited any evidence to support his

28  (continued)

medical records, including Dr. Wong's notes.[7]  Id.  At the appointment, plaintiff reported his pain was 8/10 and defendant noted that during the physical exam, plaintiff was "guarding and moved away in pain on light palpation" of his right hip and clavicle.  DSUF ¶ 8; ECF No. 33-3 at 32.  Defendant also observed that plaintiff was walking and sitting on the exam table comfortably; there was no tenderness, discoloration, or bruising; and plaintiff did not present any symptoms of acute distress.  DSUF ¶ 9.  Based on these observations, defendant did not believe that opioid medication was medically necessary, considering that the dangers of opioid misuse and addiction outweighed the benefits of providing the medication.  DSUF ¶ 10.[8]  Discontinuing opioid medication was also consistent with the State of California Prison Health Care Services Pain Management Guidelines and the Center for Disease Control Guidelines for Prescribing Opioids for Chronic Pain, which note that there is no evidence supporting a long-term benefit from opioid medication for treating chronic pain and increasing function versus non-opioid medication.  Id.

Defendant discontinued plaintiff's prescription for Tylenol with codeine in favor of regular Tylenol and informed plaintiff of this change in medication.  DSUF ¶¶ 4, 11; Response to DSUF ¶ 4.  Motrin was considered as a substitute medication but was rejected because plaintiff indicated that Motrin caused him stomach irritation.  DSUF ¶¶ 8, 11.  That same day, defendant entered an order for plaintiff to receive acetaminophen, the primary active ingredient in Tylenol, which ran from the day of the exam through February 2019.  DSUF ¶ 13; ECF No. 33-3 at 36.  The order specified that the medication was to be taken as needed and that it could be kept on plaintiff's person.  DSUF ¶ 13.  Defendant was never informed that the order for acetaminophen was unfilled.  Id.

---

dispute and his other objections are without merit, DSUF ¶ 7 is otherwise deemed undisputed except as noted herein.

[7]  Although plaintiff states that inmates are not permitted to review their medical records during their evaluations, he does not assert or provide evidence that defendant did not review his records.  ECF No. 38 at 6.

[8]  Plaintiff disputes DSUF ¶ 10 on the ground that it is "not supported by evidence, lacks cognizable legal theory, and plaintiff would prevail on the triable issues of fact(s) at trial."  ECF No. 38 at 4.  However, DSUF ¶ 10 is supported by defendant's declaration and addresses matters within his personal and professional knowledge.  Plaintiff has not cited any evidence to support his dispute and his other objections are without merit.  DSUF ¶ 10 is therefore deemed undisputed.

1    Defendant states that he believed that plaintiff had been prescribed one tablet of Tylenol

2    with codeine per day containing 30 mg of codeine, which he considered to be a low dosage

3    because the typical dose involves taking one to two tablets every four hours.  DSUF ¶ 12.[9]  The

4    notes from plaintiff's appointment, however, indicate that he was prescribed one tablet twice a

5    day, as needed.  ECF No. 33-3 at 31.  Defendant believed that a prescription for Tylenol would

6    adequately treat plaintiff's withdrawal symptoms.  DSUF ¶ 12.

7    Defendant did not have any further encounters with plaintiff after November 13, 2018.

8    DSUF at ¶ 14; Response to DSUF ¶ 14.  It is defendant's understanding that plaintiff appeared at

9    the MCSP A Facility Clinic on November 15, 2018, and refused the appointment, indicating that

10   he did not want to see defendant, and plaintiff affirms that he refused to see defendant again.  Id.;

11   Response to DSUF ¶ 14; ECF No. 38 at 6.

12   VII.   Discussion

13          A.    Addiction Treatment

14   As an initial matter, the court notes that while the complaint concerned an alleged failure

15   to treat plaintiff's chronic pain and provide substitute pain medication, plaintiff's opposition

16   solely argues a failure to treat his opioid addiction.  ECF No. 38.  Plaintiff contends that

17   defendant should have prescribed Suboxone and referred him to the MAT program to treat his

18   withdrawals and opioid addiction, repeatedly stating that failure to do so constitutes deliberate

19   indifference.  Id. at 9-16.  To the extent plaintiff is trying to assert a new claim regarding

20   addiction treatment in his opposition to the motion for summary judgment, this new claim is not

21   properly before the court.  See Pickern v. Pier 1 Imports, Inc., 457 F.3d 963, 968-69 (9th Cir.

22   2006) (a party may not raise new claims in response to a summary judgment motion).  Plaintiff

23

24   [9]  Plaintiff disputes DSUF ¶ 12 on the ground that it is "not supported by evidence, lacks
     cognizable legal theory, and plaintiff would prevail on the triable issues of fact(s) at trial."  ECF
25   No. 38 at 4.  To the extent defendant's notes from plaintiff's appointment reflect that plaintiff was
     prescribed one tablet twice a day, the court finds the statement that defendant believed plaintiff to
26   be prescribed only one tablet per day to be unsupported.  However, DSUF ¶ 12 is otherwise
     supported by defendant's declaration and addresses matters within his personal and professional
27   knowledge.  Plaintiff has not cited any evidence to support his dispute and his other objections are
     without merit.  DSUF ¶ 12 is therefore deemed undisputed except as noted herein.
28

9

1    has not moved to amend the complaint or submitted a proposed amended complaint, and these

2    new allegations will be disregarded except to the extent they are relevant to the medical

3    appropriateness of prescribing regular Tylenol in place of Tylenol with codeine.

4              B.       Pain Medication

5         It is undisputed that defendant discontinued plaintiff's prescription for Tylenol with

6    codeine.  The parties' main point of contention concerns whether defendant provided an

7    appropriate substitute medication.  On summary judgment, the question is whether plaintiff has

8    identified a material factual dispute on that issue.

9         Defendant argues that he was not deliberately indifferent in treating plaintiff's chronic

10   pain because he was implementing Dr. Wong's recommendation to remove plaintiff from Tylenol

11   with codeine, which was approved by the facility's pain management committee.  ECF No. 33-1

12   at 6.  However, the court finds that with respect to this argument, defendant has overstated the

13   evidence.  Dr. Wong's notes indicate that plaintiff may take over-the-counter pain medication as

14   needed but make no mention of discontinuing Tylenol with codeine.  ECF No. 33-3 at 26.

15   Furthermore, while the records submitted do indicate that discontinuation of plaintiff's

16   prescription was being considered, they do not show that the pain management committee had

17   made a final decision and instead reflect that plaintiff was being scheduled for an appointment to

18   determine whether his request to continue Tylenol with codeine should be approved or denied.

19   Id. at 28.  Defendant's argument that the decision to discontinue plaintiff's prescription was not

20   medically unacceptable because it had already been recommended and affirmed by Dr. Wong and

21   the pain management committee therefore fails.

22        However, defendant also argues that plaintiff's challenge to the change in his medication

23   is no more than a difference of opinion and that defendant's decision to discontinue opioid

24   medication was medically acceptable, which dooms an Eighth Amendment deliberated

25   indifference claim as a matter of law.  See ECF No. 33-1 at 6-7.  To support these arguments

26   defendant provides evidence that he concluded, based on his medical education and training, that

27   opioid medication was not medically necessary to treat plaintiff's chronic pain in light of the

28   content of Dr. Wong's notes, his own observations of plaintiff's condition, the dangers of

1    continued opioid use compared to the benefits, and plaintiff's low dose of Tylenol with codeine.

2    DSUF ¶¶ 7, 9-10, 12.  Defendant also presents evidence that based on these factors, particularly

3    plaintiff's relatively low dose of Tylenol with codeine, he believed that the prescription for

4    regular Tylenol would be sufficient to address any symptoms of opioid withdrawal.  DSUF ¶ 12.

5          Plaintiff's opposition does not challenge the decision to discontinue his prescription for

6    Tylenol with codeine and instead focuses primarily on the failure to prescribe Suboxone and refer

7    plaintiff to the MAT program.  ECF No. 38 at 9-16.  However, in his separate statement of facts,

8    plaintiff states that defendant discontinued his prescription for Tylenol with codeine because

9    plaintiff rejected defendant's sexual advances.[10]  Id. at 7.  This statement fails to create a genuine

10   dispute of material fact because it is not supported by evidence.  Plaintiff first cites his declaration

11   in which he identifies defendant's statement that "he was taking me off Tylenol 3's (an opio[i]d)

12   because the government was cracking down" as the sole reason for the discontinuation of the

13   prescription.  Id. at 19-21.  He also cites the complaint, which alleges that defendant became

14   belligerent and told plaintiff he was taking him off medication after plaintiff turned down his

15   sexual advances (id. at 37), but this allegation is nothing more than a speculative inference as to

16   defendant's motivation.  Furthermore, the complaint alleges that prior to making the alleged

17   sexual advances defendant told plaintiff that he "was taking me off pain medication (Tylenol 3's)

18   because the government was cracking down."  Id.  Even if defendant told plaintiff his prescription

19   was being discontinued because "the government was cracking down," this statement, by itself,

20   does not establish that the decision to discontinue Tylenol with codeine was medically

21   unacceptable, and the undisputed evidence shows that defendant evaluated plaintiff and reviewed

22   his records prior to making his decision.

23         With respect to the decision to substitute regular Tylenol for Tylenol with codeine,

24   plaintiff argues that he should have received Suboxone and been referred to the MAT program.

25   ECF No. 38 at 9-16.  However, plaintiff is not entitled to the medication of his choice and has no

26   right to dictate what medications he is prescribed.  See Stiltner v. Rhay, 371 F.2d 420, 421 n.3

27

28   ───────────────
     [10]  To the extent that plaintiff is trying to revive his sexual harassment claim, that claim has been
     dismissed and will not be considered.  ECF No. 14.

(9th Cir. 1967) ("[P]laintiff's allegations show only that he has not been receiving the kind and quality of medical treatment he believes is indicated. Like the Seventh Circuit, 'we know of no authority standing for the proposition that such a claim as plaintiff attempts to assert here is cognizable under the Federal Civil Rights Act.'" (quoting United States ex rel. Lawrence v. Ragen, 323 F.2d 410, 412 (7th Cir. 1963))). Instead, plaintiff must prove that the care he received was medically unacceptable.

In support of his argument that the decision to prescribe regular Tylenol was medically acceptable, defendant provides evidence that plaintiff's prescribed dosage of Tylenol with codeine was well below the standard dose,[11] and he avers that based upon his education and training, he believed the regular Tylenol would adequately treat any withdrawal symptoms plaintiff may suffer. ECF No. 33-3 at 21. In opposition, plaintiff argues that the applicable standard of care required treatment with Suboxone and treatment groups, but he does not offer any evidence beyond his own unqualified opinion to support this position. ECF No. 38 at 6-7, 12-13, 20-21. Plaintiff also fails to address or provide evidence addressing the appropriateness of the decision to switch him to regular Tylenol when considering the low dose of opioid medication he was prescribed.

Plaintiff further argues that he was unjustifiably delayed in receiving treatment because he was eventually referred to the MAT program three years later, after he began taking illegal drugs such as heroin and wax. Id. at 20. However, plaintiff's referral to an assisted treatment program three years later—and after he began taking illegal drugs—does not show that defendant's decision to prescribe regular Tylenol in place of Tylenol with codeine was medically unacceptable. Moreover, even assuming plaintiff began exhibiting withdrawal symptoms shortly after Tylenol with codeine was discontinued, it is undisputed that he refused to see defendant after November 13, 2018 (DSUF ¶ 14; Response to DSUF ¶ 14), and there is no evidence that defendant was aware that plaintiff was suffering from withdrawal symptoms and failed to treat

---

[11]  Although the record reflects that plaintiff was prescribed one tablet twice per day rather than once per day as defendant asserts, plaintiff's dosage was still considerably less than the typical dose of one to two tablets every four hours, which would equate to up to six to twelve tablets per day.

1    them.  Defendant also asserts in his reply that while an assisted treatment program currently exists

2    at MCSP and is known as the Primary Care Provider Medication Assisted Treatment program, it

3    did not exist on November 13, 2018, when he saw plaintiff.  ECF No. 39 at 9-10.

4        Finally, to the extent that plaintiff's receipt of the regular Tylenol was delayed, this does

5    not constitute deliberate indifference by defendant.  It is undisputed that defendant did not see

6    plaintiff after November 13, 2018, and plaintiff does not assert or provide evidence suggesting

7    that defendant was aware of the delay and ignored it, much less that he intentionally caused the

8    delay.

9        For these reasons, plaintiff has not raised a genuine issue of material fact regarding the

10   medical acceptability of discontinuing Tylenol with codeine or the decision to substitute regular

11   Tylenol.  Even if defendant was incorrect in his conclusion that regular Tylenol would be

12   sufficient to treat plaintiff's withdrawal symptoms under the circumstances, and even if his

13   treatment choice was ultimately wrong, plaintiff cannot establish a violation of his Eighth

14   Amendment rights without evidence that defendant acted with knowledge of a serious risk to

15   plaintiff's health and with a culpable state of mind.  See Jett, 439 F.3d at 1096.  Accordingly,

16   defendant is entitled to summary judgment.

17            C.    Qualified Immunity

18       "[G]overnment officials performing discretionary functions generally are shielded from

19   liability for civil damages insofar as their conduct does not violate clearly established statutory or

20   constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457

21   U.S. 800, 818 (1982) (citations omitted).  In analyzing a qualified immunity defense, the court

22   must consider the following: (1) whether the alleged facts, taken in the light most favorable to the

23   plaintiff, demonstrate that defendant's conduct violated a statutory or constitutional right; and (2)

24   whether the right at issue was clearly established at the time of the incident.  Saucier v. Katz, 533

25   U.S. 194, 201 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223, 236 (2009)

26   (overruling Saucier's requirement that the two prongs be decided sequentially).  Since the facts

27   taken in the light most favorable to plaintiff do not show the violation of a constitutional right, it

28   is not necessary for the court to address defendant's qualified immunity argument.

VIII.   Plain Language Summary of this Order for a Pro Se Litigant

It is undisputed that defendant prescribed a substitute medication to treat your chronic pain and there is no evidence that he intentionally delayed your receipt of the acetaminophen. There is no evidence showing that discontinuing Tylenol 3 and prescribing regular Tylenol was medically unacceptable under the circumstances.  Because you have not provided evidence that defendant was aware of a serious risk to your health and disregarded that risk, you cannot show that he was deliberately indifferent.

CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1.   Defendant's motion for summary judgement (ECF No. 33) be GRANTED.

2.   Judgment be entered for defendant.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 29, 2023

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

14